```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
SUTTER SECURITIES INCORPORATED, et al., :
                                          :
                       Plaintiffs,        :
                                          :        26cv340 (DLC)
            -v-                           :
                                          :        OPINION AND
JAMES MACKAY, et al.,                     :           ORDER
                                          :
                       Defendants.        :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiffs:

Michael Philip Richter
Susan M. Kritzmacher
FBT Gibbons LLP
One Pennsylvania Plaza
Suite 4515
New York, NY 10119

Tara Rice
FBT Gibbons LLP
501 Grant Street
Suite 800
Pittsburgh, PA 15219

For defendants:

Daniel Harrison Oliner
Olsen Barton LLC
4035 Douglas Way
Suite 200
Lake Oswego, OR 97035

Thomas Bode, Jr.
Larkins Vacura Kayser
121 SW Morrison St.
Ste. 700
Portland, OR 97024

William Henry Gagas
Dorf Nelson Zauderer, LLP
555 Theodore Fremd Avenue
Rye, NY 10580

DENISE COTE, District Judge:

In a putative class action filed in Oregon state court, James and Chelsea MacKay ("the MacKays") have brought securities claims against broker/dealer Sutter Securities Inc. ("Sutter") and its affiliates for their role in facilitating the sale of a company's stock.  Sutter and its affiliates have now filed the instant action to obtain a declaration that the MacKays' claims against them must be filed in New York and to bar the MacKays from engaging in further proceedings against them in Oregon.

The MacKays have filed a motion to dismiss.  For the reasons below, the MacKays' motion is granted.

## Background

This case arises out of investments the MacKays, who are residents of Washington State, made beginning in 2021 in Ambulant, Inc. ("Ambulant").  Ambulant is a phone accessory manufacturer that is incorporated in Delaware and has its principal place of business in Oregon.  In August of 2020, it hired Sutter to serve as a placement agent for an anticipated securities offering.  In a September 2021 private placement, Ambulant sold its stock to the MacKays in return for $100,000.

The stock sale was effectuated by a Subscription Agreement. The Subscription Agreement defines "the Company" as Ambulant and "the Subscriber" as "the purchaser identified on the signature page to this Agreement."  The MacKays signed that signature page.  In a section titled "Broker/Dealer," the Subscription Agreement identifies Sutter as the placement agent.  It states:

> Subscriber acknowledges that the Company engaged Sutter Securities, Inc., a California corporation and broker/dealer registered with FINRA ("Sutter Securities"), as a placement agent pursuant to a Placement Agent and Advisory Services Agreement ("Placement Agent Agreement") between the Company and Sutter Securities.  Sutter Securities is acting as a placement agent in this Offering and that, in connection with such engagement, the Company has previously paid to Sutter Securities a non-refundable cash advisory fee of $25,000 and that, in connection with the Closing, the Company will pay to Sutter Securities additional compensation. . . .

The Subscription Agreement has a forum selection clause, titled "Submission to Jurisdiction," in which the MacKays and Ambulant selected New York as the forum for litigation "between them" over the Subscription Agreement.  It states:

> The Company and each Subscriber hereby agree that any dispute that may arise between them arising out of or in connection with this Subscription Agreement shall be adjudicated before a court located in the City of New York, Borough of Manhattan, and they hereby submit to the exclusive jurisdiction of the federal and state courts of the State of New York located in the City of New York, Borough of Manhattan with respect to any action or legal proceeding commenced by any party, and irrevocably waive any objection they now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the

3

> fact that such court is an inconvenient forum,
> relating to or arising out of this Subscription
> Agreement or any acts or omissions relating to the
> sale of the Securities hereunder, and consent to the
> service of process in any such action or legal
> proceeding by means of registered or certified mail,
> return receipt requested, postage prepaid, in care of
> the address set forth herein or such other address as
> either party shall furnish in writing to the other.

(Emphasis supplied.)

In February 2022, the MacKays purchased a promissory note with Ambulant for $200,000.  In February 2023, the MacKays rolled the 2022 note into a second promissory note for $440,000 (the "Note").  The Note, which is signed by the MacKays and two Ambulant executives, has a choice of law provision and forum selection clause titled "Governing Law; Venue" which states:

> This Note will be exclusively governed by the laws of
> the State of Oregon without regard to conflicts of
> laws principles.  Any action arising out of this Note
> shall be commenced by Payee in Deschutes County,
> Oregon.  Maker hereby consents to the jurisdiction of
> any such court in any such action and to the laying of
> venue in the State of Oregon.

(Emphasis supplied.)

In February 2024, Ambulant defaulted on the Note.  As required by the Note's forum selection clause, the MacKays filed suit against Ambulant and three of its officers and directors in Oregon state court in October.  The lawsuit asserted violations of state securities law for making false statements about

4

Ambulant's financial circumstances during the sale of its securities ("Oregon Action").  See Or. Rev. Stat. § 59.115.

On June 13, 2025, after the MacKays had engaged in motion practice and discovery in the Oregon Action, the MacKays sent Sutter and its affiliates ("Sutter Plaintiffs") a notice required by Oregon law informing them that they were potential defendants in a class action lawsuit.  In a letter exchange regarding possible settlement discussions following that notice, the MacKays provided the Sutter Plaintiffs with a draft of the class action complaint they intended to file in the Oregon Action.

Before the MacKays amended their complaint and filed the class action, the Sutter Plaintiffs filed this action in New York state court on December 9.  Relying on the forum selection clause of the Subscription Agreement, the Sutter Plaintiffs seek a declaration that the MacKays can only assert claims against them in New York.  On December 17, the MacKays amended their complaint in the Oregon Action and filed a putative class action on behalf of Ambulant investors.  The class action reasserts the claim against Ambulant and names the Sutter Plaintiffs and affiliates of Ambulant as additional defendants.  It brings a claim against the Sutter Plaintiffs under the Oregon securities statute, Or. Rev. Stat. § 59.115.  It alleges that the Sutter

Plaintiffs participated in and materially aided Ambulant's sale of securities and are thus jointly and severally liable for Ambulant's violation of the Oregon statute.

The Sutter Plaintiffs filed their first amended complaint ("FAC") in the instant action on January 13, 2026.  On January 14, the MacKays removed the case to federal court and moved to dismiss the FAC on February 3.  An Order of February 4 warned the Sutter Plaintiffs that it would be unlikely they would have another opportunity to amend.  The Sutter Plaintiffs filed a second amended complaint ("SAC") on February 18.  The SAC adds a request for a permanent injunction barring the MacKays from proceeding with the Oregon Action.  It also brings claims for breach of contract and breach of indemnity against the MacKays for violating the indemnity clause in the Subscription Agreement.

On March 12, a hearing was held in the Oregon Action on the MacKays' motion for approval of a class settlement with one of the Oregon defendants and the effect of another Oregon defendant's filing of bankruptcy.  The Oregon court noted the importance of the outcome of the instant motion and therefore delayed making a ruling on those issues.

The MacKays filed a renewed motion to dismiss this action on March 13.  The motion became fully submitted on April 3.

### Discussion

In reviewing a motion to dismiss, the court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." United States v. Strock, 982 F.3d 51, 63 (2d Cir. 2020) (citation omitted). A document is "integral when the complaint relies heavily upon the document's terms and effect." Id. (citation omitted). The MacKays have filed a copy of the Subscription Agreement with this motion. The document is integral to the SAC, which relies on the enforcement of the forum selection clause in the Agreement.

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." In re Fairfield Sentry Ltd., 147 F.4th 136, 150 (2d Cir. 2025) (citation omitted). See also Freeford Ltd. v. Pendleton, 857 N.Y.S.2d 62, 65 (N.Y. App. Div. 1st Dept. 2008). The Sutter Plaintiffs assert that the forum selection clause in the Subscription Agreement requires the MacKays to bring any securities litigation in this district and therefore provides personal jurisdiction over the MacKays.

The parties do not dispute that the forum selection clause in the Agreement is valid. The MacKays argue, however, that the clause, by its plain and unambiguous terms, does not apply to a

dispute between them and the Sutter Plaintiffs.  They are correct.[1]

The parties rely on New York law in their briefs, which is "sufficient to establish choice of law."  Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) (citation omitted).  Moreover, "where a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause."  Martinez v. Bloomberg LP, 740 F.3d 211, 214 (2d Cir. 2014).  The Subscription Agreement's choice-of-law clause identifies New York law as the governing law.

Under New York law, "the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent and the best evidence of what parties to a written agreement intend is what they say in their writing."  Donohue v. Cuomo, 38 N.Y.3d 1, 12 (2022) (citation omitted).  A court interpreting a contract under New York law is "bound, first and foremost, by the terms' plain meaning."  Bank of New York Tr. Co. v. Franklin Advisers, Inc., 726 F.3d 269, 280 (2d Cir. 2013).  "[A] contract is unambiguous if the

---

[1] The MacKays have abandoned arguments for dismissal premised on Colorado River abstention.  The MacKays have also relied on the first-filed rule.  It is unnecessary to reach that argument.

language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion."  Donohue, 38 N.Y.3d at 13 (citation omitted).  If the terms of the contractual language are clear or unambiguous, that clarity "obviates a need to consider extrinsic evidence."  Franklin, 726 F.3d at 280.

It is undisputed that the Subscription Agreement's forum selection clause requires Ambulant and the MacKays to litigate any dispute that may arise "between them" out of the Subscription Agreement in the federal or state courts in Manhattan.  By its unambiguous terms, therefore, the forum selection clause in the Subscription Agreement does not cover a dispute between the Sutter Plaintiffs and the MacKays.  It is also undisputed that, while the Sutter Plaintiffs are not parties to the Subscription Agreement, they rely exclusively on that clause to bring their suit against the MacKays in New York.

Under New York law, generally only the "parties in privity of contract" may enforce a forum selection clause.  May v. U.S. HIFU, LLC, 951 N.Y.S.2d 163, 166 (N.Y. App. Div. 2d Dept. 2012) (citation omitted).  See also Freeford, 857 N.Y.S.2d at 38. There are, however, three sets of circumstances

> under which a nonparty may invoke a forum selection clause: an entity or individual that is a third-party

9

> beneficiary of the agreement may enforce a forum selection clause found within the agreement[;] parties to a global transaction who are not signatories to a specific agreement within that transaction may nonetheless benefit from a forum selection clause contained in such agreement[;] and a nonparty that is closely related to one of the signatories can enforce a forum selection clause.

May, 951 N.Y.S.2d at 166 (citation omitted).  See also P.S. Fin., LLC v. Eureka Woodworks, Inc., 184 N.Y.S.3d 114, 129 (N.Y. App. Div. 2d Dept. 2023) (enforcing forum selection clause against a non-signatory).

"[T]o recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party."  Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 124 (2d Cir. 2005) (applying New York law).  A contractual requirement that the promisor "render performance directly to the third party shows an intent to benefit the third party."  Id. Contract language referring to third parties as "necessary to assist" the parties in their performance does not show an intent to render performance for the third party's benefit.  Id. at 126.  See also Freeford, 857 N.Y.S.2d at 67.

With respect to the global transaction exception, an agreement's forum selection provision may apply to a non-signatory when the non-signatory "is a party to another related agreement that forms part of the same transaction."  P.S. Fin.,

184 N.Y.S.3d at 129.  In assessing whether the agreements are sufficiently related, courts assess whether they were executed on the same date, whether the agreements refer to each other, and whether the agreements express an intent to be considered as one agreement.  Id. at 130.

For the "closely related" exception to apply, the relationship between the non-signatory and a signatory "must be sufficiently close that the non-signatory's enforcement of the forum selection clause is foreseeable to the signatory against whom the non-signatory wishes to enforce the forum selection clause."  Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 723 (2d Cir. 2013) (citation omitted); see EPAC Techs. Ltd. v. Interforum S.A., 193 N.Y.S.3d 3, 5-6 (N.Y. App. Div. 1st Dept. 2023); P.S. Fin., 184 N.Y.S.3d at 130-31.

The plaintiffs argue that they fall under each of the three exceptions and that the forum selection clause may be enforced against the MacKays even though Sutter did not sign the agreement containing the clause.[2]  These arguments fail.

First, the plaintiffs argue that the "Broker/Dealer" clause of the contract, which discloses Sutter as the placement agent, renders Sutter a third-party beneficiary of the agreement.  That

---

[2] Because Sutter cannot enforce the forum selection clause, it is unnecessary to address the additional reasons that its two affiliates may not do so.

11

clause does not make Sutter a third-party beneficiary of Ambulant's sale of its stock to the MacKays.  It simply refers to Sutter as the entity that will assist Ambulant with its private placement.  See Subaru, 425 F.3d at 126.  In making this argument, the plaintiffs rely on Bayerische Landesbank, New York Branch v. Aladdin Capital Mgt. LLC, 692 F.3d 42 (2d Cir. 2012).  In Bayerische, the contract provisions were plausibly read to impose obligations on signatories to benefit non-signatory noteholders.  Id. at 55.  But unlike the contract in Bayerische, the Subscription Agreement is "complete, clear and unambiguous" as to the parties on which it confers benefits.  Id. at 53 (citation omitted).  Those parties were the signatories and not Sutter.

Next, the plaintiffs argue that the SAC pleads that they are parties to a global transaction with the MacKays.  The plaintiffs point to allegations that the MacKays signed not only the Subscription Agreement but also an investor representation questionnaire in connection with the Agreement.  This argument fails as well.  The SAC does not plausibly allege that the Sutter Plaintiffs executed a contract that was a component of a global transaction with the MacKays.  See P.S. Fin., 184 N.Y.S.3d at 130.  Their citation to Freeford, 857 N.Y.S.2d 62, is inapposite.  There, the relevant agreements were executed "on

the same day," were executed "for the same purpose," and were part of "a single business transaction." Id. at 68.  The SAC does not identify any agreement executed by the Sutter Plaintiffs that fits this description.

Finally, the plaintiffs assert that they are closely related to Ambulant by operation of the Broker/Dealer clause in the Subscription Agreement.  This is not the close relationship required by law.  Ambulant and Sutter are not related corporate entities.  They have no formal or economic relationship.  Indeed, they have no relationship apart from Sutter acting as a broker/dealer for Ambulant in the private placement.  The plaintiffs have failed to plausibly allege that the MacKays could reasonably foresee that Sutter was entitled to enforce the forum selection clause against them.

In making this final argument, the plaintiffs primarily rely upon the Second Circuit's decision in Magi, 714 F.3d 714.  But Magi does not support plaintiffs' argument.  There, a sublicensee sought to sue the Vatican State in New York even though the master licensing agreement between the Vatican State and its U.S. licensee contained a forum selection clause identifying Vatican City as the forum to resolve licensing disputes.  Id. a 718.  Pursuant to that master agreement, the licensee had entered into sublicensing agreements with the

13

plaintiff that included identical forum selection clauses.  Id. at 718-19.  The Second Circuit enforced that forum selection clause against the sublicensee and dismissed its lawsuit against the Vatican State, finding that the Vatican State was closely related to the licensee by virtue of the master agreement.  Id. at 723.  In doing so, it observed, among other things, that the sublicensing agreements were subject to approval by the Vatican State and that the sublicensee's rights arising out of the sublicensing agreements were wholly derivative of the licensee's rights acquired through the master agreement.  Id.  Here, as stated above, the Broker/Dealer provision only demonstrates that the plaintiffs served a supporting role in the transaction between two unrelated parties.

At bottom, the Sutter Plaintiffs insist that Oregon is an improper forum for the MacKays' securities suit brought against them under Oregon state law.  In the ordinary course, this is an issue that should be raised in the Oregon Action.  The Sutter Plaintiffs have not shown that they may circumvent that process by seeking to enforce a forum selection clause in an agreement to which they are not parties.

14

## Conclusion

The defendants' March 13, 2026  motion to dismiss is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:     New York, New York
           May 5, 2026

_____
DENISE COTE
United States District Judge